UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JINEL SEXTON | CIVIL ACTION |
| VERSUS | NO. 24-1506 |
| WARDEN EDWARD BICKHAM | SECTION "I"(1) |

**OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION**

 Now into Court, through undersigned counsel, comes the petitioner, Jinel Sexton, who files his objections to the Report and Recommendation of Magistrate Judge Janis Van Meerveld (Doc. 15), received by Mr. Sexton on December 20, 2024. These written objections timely follow within fourteen (14) days of receipt as required under 28 U.S.C. § 636(b)(1) and *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). In filing his objections, Mr. Sexton requests a review of that recommendation from this Honorable Court and prayers for habeas corpus relief. In the event that this Court denies any part of the petitioner's claim, it is further requested that a certificate of appealability be granted.

**GROUNDS FOR RELIEF**

1. Magistrate Meerveld erred in recommending that the claims in Mr. Sexton's 28 U.S.C. § 2254 federal habeas corpus application be denied and dismissed with prejudice.

**OBJECTION TO CLAIM ONE**

 The trial court's admission of jail telephone calls into evidence was erroneous, and such admission was a crucial, highly significant factor in the defendant's conviction. While a claim that state courts misapplied state evidence law is not reviewable in this federal proceeding, habeas relief may be granted for errors in a trial court's evidentiary rulings when those errors result in a denial of fundamental fairness under the Due Process Clause. An erroneous admission of

prejudicial evidence will justify habeas relief if the admission was a crucial, critical and highly significant factor in the defendant's conviction. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). The State court's admission of the jail telephone calls was erroneous and resulted in a denial of fundamental fairness under the Due Process Clause.

The State moved to introduce recorded jail telephone calls into evidence to rectify the victim's recantation during her testimony. Generally, other crimes evidence is not admissible to prove the character of a person in order to show that he acted in conformity therewith. La. C.E. art. 404(B)(1). However, evidence of a defendant's attempt to threaten, kill, intimidate, or dissuade a witness from testifying is a well-recognized exception to the general rule that evidence of the crimes is typically not admissible. See *State v. Burnette*, 353 So.2d 989, 991 (LA. 1977); *State v. Williams*, 2014-1194 (La. App. 1st Cir. 3/6/15), 2015 WL 996231, at *7. Additionally, evidence of an attempt to influence witnesses or fabricate evidence is admissible despite its prejudicial effect. *See State v. Graves*, 301 So.2d 864, 866 (La. 1974).

Before a trial court admits evidence of such other crime, the trial court must determine whether (1) evidence fits the class of evidence constituting such admissions by conduct; (2) there is substantial evidence that the defendant committed the other crimes; and (3) the probative value of such crimes evidence will outweigh its prejudicial effect. If the other crimes evidence fails to pass any of these three tests, it must be excluded. *Burnette*, 353 So.2d at 992. The First Circuit Court of Appeal considered the three-pronged analysis set forth in *Burnette*, and found the jail calls were properly admitted. In support of its conclusion, the Court pointed to the content and timing of the jail calls, stating they "seemingly indicate that the defendant was attempting to influence or have others influence initially what would happen during the victim's scheduled meeting with the

assistant district attorney and subsequently as to whether or not the victim would continue to evade questioning and/or not appear at trial." Evidence that seemingly indicates a defendant committed another crime is less than the standard in *Burnette*, which requires substantial evidence that the defendant committed other crimes. Magistrate Meerveld concedes that the comments made in the telephone calls were vague at best and not direct evidence of petitioner's guilt, thus not substantial evidence that the defendant attempted to interfere with the victim in this case.

Further, though probative regarding the victim's change in testimony, the telephone calls were only circumstantially probative. Mr. Sexton was voluntarily provided with information by his girlfriend regarding the victim's desire to participate in this case. He enquires about the State's efforts to intimidate, harass, or coerce the victim, but he neither requests nor demands his family to do the same. Again, the comments are vague at best. More importantly, the calls were highly prejudicial and not outweighed by the probative value. In these calls, Mr. Sexton repeatedly uses a derogatory term to refer to his own defense attorney, which not only disparages Mr. Mecca but also shows Mr. Sexton in a negative light referring to his own attorney like that. Further, the calls revealed to the jury that Mr. Sexton was incarcerated pending his trial. These prejudicial aspects of the calls outweigh the probative value of circumstantially explaining the victim's change in testimony. The First Circuit Court of Appeal erroneously rejected Mr. Sexton's claim that the jail telephone calls should not have been admitted.

Evidence was wrongfully admitted, and such evidence played a crucial, critical, and highly significant role in the trial. The magistrate judge's report and recommendation discounts the jail calls as neither crucial, critical nor highly significant in the trial, citing the victim's consistent pretrial statements and DNA evidence as ample compelling evidence of plaintiff's guilt. However, the jail telephone calls impact the narrative significantly. Without the jail phone calls, the victim's

recantation would have been an issue of debate for the jury as to whether the victim was more credible in her pre-trial statements or in her trial testimony. The jail telephone calls were utilized by the State as an explanation of why the victim recanted her testimony, thus driving the narrative that the victim was insincere in her trial testimony. These jail telephone calls were crucial, critical and highly significant in the trial, and their erroneous admission warrants habeas relief.

## **OBJECTION TO CLAIM FOUR**

Mr. Sexton's fourth claim urges the ineffectiveness of his trial counsel relative to the urine analysis results. Mr. Sexton's trial counsel, Mr. James Mecca, was ineffective in violation of Mr. Sexton's constitutional right to counsel, when he failed to realize he had confirmation urine analysis results. While the state court correctly identified *Strickland v. Washington,* 466 U.S. 668 (1984), as the controlling federal law in its denial of the claim, it erred in its application. There is no reasonable argument that counsel satisfied *Strickland's* deferential standard.

In *Strickland*, the United States Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. *Id.* at 688. Mr. Sexton's trial counsel was deficient, and that deficient performance prejudiced the defense.

Mr. Sexton's trial counsel filed a Motion in Limine on October 11, 2019, regarding the victim's urine screen results. Trial counsel, and consequently Mr. Sexton, believed they had only received the urine screen results of the victim from Children's Hospital. These results showed a

presumptive positive result for benzodiazepine, but did not have confirmed results. However, an additional report from ARUP Laboratories existed and demonstrated the confirmed positive results. Merely days before the trial was to commence, Mr. Mecca believed the State had only produced presumptive positive test results of the victim, until he was told in open court by the State that it had tendered confirmation test results in discovery. Mr. Mecca's oversight of the confirmation results is a first step in counsel's overall deficient preparation, investigation and ultimate performance.

While trial counsels are given great deference in their trial strategies, Mr. Mecca's failure to realize he had received confirmation urine toxicology reports is a serious error in this case. Such an error impacts investigation, preparation, and trial strategy. Even the magistrate judge acknowledged Mr. Mecca's actions as problematic. However, Mr. Sexton is still required to demonstrate prejudice as a result of the deficient performance.

An erroneous belief that the State had no confirmation results is consequential for investigation, preparation, trial purposes and defense strategy. Though it seems the State stated on record a few days before trial to Mr. Mecca that it had tendered such results in discovery, Mr. Mecca's questioning of Dr. Jamie Jackson seems to indicate Mr. Mecca was still not in receipt of the confirmation results. Specifically, during cross-examination of Dr. Jackson, Mr. Mecca says, "The documents I've seen were indicating that if the test was wanted, that a request had to be made or a test would be made if the sample is sufficient. . . . But I haven't seen any documents to show that there was an actual confirmation." Trial Tr. 734:9-16. Once Dr. Jackson correctly identifies the confirmation results, Mr. Mecca changes subjects and abandons his line of questioning.

Children's Hospital's results were merely presumptive positives for benzodiazepines. Having only presumptive positive results in a case allows for the exploration of false positives

during cross examination by the defense, which is precisely what Mr. Mecca attempted to do during cross-examination of Ms. Britney Graham. Trial Tr. 531:28-31. Additionally, proceeding with trial under the belief that the victim was only administered a presumptively positive test allows the defense to attack the thoroughness of the investigation and validity of the science through cross-examination, which is what Mr. Mecca seemingly started to do during cross-examination of Dr. Jackson. Realizing the mistake in the middle of trial, or even a few days before trial, undoubtedly impacted trial strategy of cross-examination. Further, realizing the mistake just days before trial denied Mr. Sexton an opportunity to hire his own independent expert to review the data and testify as to the results. In fact, Mr. Sexton was not even aware of the confirmation results until after trial.

Mr. Sexton's trial counsel was undoubtedly deficient in his performance when he was seemingly unaware that the confirmation test results were in the discovery he was provided. This deficient performance prejudiced Mr. Sexton in numerous ways from investigation, to preparation, to trial strategy. The State court focused on whether Mr. Mecca had motions he could urge to cure his defect, but it did not reasonably apply *Strickland's* standard to Mr. Mecca's deficient performance and the prejudice it had on the defendant. There is no reasonable argument that counsel satisfied *Strickland's* deferential standard.

## **OBJECTION TO CLAIM TEN**

Mr. Sexton's tenth claim urges his trial counsel was ineffective for failing to cross-examine the victim during trial. The United States Supreme Court in *Strickland v. Washington* stated,

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing

professional norms, is to make the adversarial testing process work in the particular case.

466 U.S. at 690. In this case, Mr. Sexton's trial counsel was ineffective for failing to cross-examine the victim, which was crucial after the State presented evidence claiming Mr. Sexton was responsible for her recantation.

"The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005). When called to testify, the victim in Mr. Sexton's case essentially recanted her pre-trial accusations against him. In some cases, a court may find it reasonable for a defense attorney to not cross-examine a recanting witness. As the magistrate judge opined, "Such a wholesale recantation at trial is the most pro-defense testimony a defendant could reasonably expect. Therefore, tempting fate by cross-examining a recanting victim would be both unwise and possibly counter-productive." (Doc. 15, p. 47). While that may be true in the average case with a recanting victim, Mr. Sexton's case included a critical distinction, which was the State's narrative and evidence in support that Mr. Sexton played a coercive role in the victim's recantation.

Had the jail phone calls not been admitted, it may be said that Mr. Sexton's trial counsel's decision to not cross-examine the victim was reasonable in light of her recantation. However, the jail phone calls casted a dark shadow over the recantation, such that it was no longer "pro-defense." Failure to cross-examine the victim allowed for the State's narrative, that Mr. Sexton coerced, intimidated or influenced her recantation, to be unchallenged. Though counsel's poor trial decisions are often excused as trial strategy, the decision to not question the victim at all was deficient performance by trial counsel in light of the jail phone calls.

Cross-examination of the victim could have expounded on why the victim lied and how the temazepam entered her body, but more importantly, it should have focused on dispelling the notion that Mr. Sexton had influenced her recantation. Additionally, it could have bolstered the defense's theory that the victim initiated contact with the defendant. If during cross-examination, the victim admitted to consuming temazepam on her own accord, admitted to instigating contact with the defendant and denied coercion by Mr. Sexton to recant, there is a reasonable probability of a different outcome. But the failure of Mr. Sexton's trial counsel to engage in a cross-examination with the victim denied Mr. Sexton that defensive tactic.

Mr. Sexton's trial counsel was deficient in his performance when he failed to cross-examine the victim. This deficient performance prejudiced Mr. Sexton by denying him an opportunity to defend the temazepam allegations, bolster his version of events, and discredit the State's narrative that he influenced the victim to recant. The State court did not reasonably apply *Strickland's* standard to Mr. Mecca's deficient performance and the prejudice it had on the defendant. No reasonable argument that counsel satisfied *Strickland's* deferential standard exists, thus habeas relief is warranted.

Respectfully Submitted:

/s/ James P. Manasseh
JAMES P. MANASSEH
Louisiana Bar Roll No. 19022
8075 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: 225-383-9703
Facsimile: 225-383-9704
Email: brooke@manassehandgill.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JINEL SEXTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1506** |
| **WARDEN EDWARD BICKHAM** | **SECTION "I"(1)** |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing Objections to Magistrate's Report and Recommendation with the Clerk of Court by using the CM/ECF which will send a notice of electronic filing to opposing counsel in the United States Attorney's Office.

Baton Rouge, Louisiana this 3rd day of January, 2024.

/s/ James P. Manasseh
JAMES P. MANASSEH